AMERICAN BRAKE SHOE & FOUNDRY CO. v. RAILWAY MATERIALS CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 22, 1907.)

No. 1,262.

PATENTS—INVENTION—BRAKE SHOE.

    The Herron patent, No. 423,998, for a brake shoe of the composite type, having wrought-iron bars imbedded in the casting for the purpose of strengthening it, is void for lack of invention. The composite shoe itself was old in the art, and the method of re-enforcing castings by imbedding wrought-iron strips therein was old in the casting art, and practiced generally by foundrymen. Also composite brake shoes had previously been strengthened by others by applying a wrought-iron backing plate and by strips placed on the sides, and the transference of such plates or strips to the middle of the shoe by the well-known foundry method did not involve invention nor accomplish any new practical result.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 143 Fed. 540.

Appellant's bill for alleged infringement of patent No. 423,998, issued March 25, 1890, to Herron, for improvements in brake shoes, was dismissed for want of equity on the ground of lack of invention.

Claim 2 was the basis of the suit: "(2) In a brake-shoe, the shoe, A, having blocks, B, of steel set in its face below the surface, and the

strips, C, of wrought iron, substantially as shown and described, and for the purpose specified."

The drawings and description, explanatory of the claim, are as follows:

*Fig 1*    *Fig 2*    *Fig. 3*

"This invention relates to brake shoes, more especially relating to the class of shoes known as 'composite' shoes, the object being to provide a shoe that will be strong, durable, and afford the greatest possible frictional contact with the hardened tire of the wheel, and one that will fit itself to the circumferential curve of said wheel, and that will not be open to the defects heretofore found in composite shoes. The details whereby these ends are accomplished are hereinafter fully described, and the parts claimed as new pointed out in the claims.

"In the accompanying drawings, Fig. 1 is a perspective view showing the contact-face and one edge and an end of the shoe. Fig. 2 is a vertical cross-section of Fig. 1 on the line x, y. Fig. 3 is a longitudinal section on the line a, b, Fig. 1 showing the cross-sectional contours.

"In the figures like reference marks indicate corresponding parts in the several figures.

"The blocks, B, are of crucible steel and are of cross-sectional form, as best shown in Fig. 3, being set in the face of the main body of said portion A an eighth to a quarter of an inch, said distance to be governed by the wearing qualities of the iron of which said part A is made, the prominence of the parts of the body, A, projecting above the blocks, B, being for the purpose of offering a surface for contact with the wheel which shall be easily worn down to the curve of the circumferential surface of the wheel and afford as soon as possible a steady bearing for the shoe on said circumferential surface. Projections, D, enter corresponding grooves in the hard pieces, B, and form a rib strengthening the shoe and obviating any possibility of lateral displacement of the parts, B. Strips or curved rods, C, of wrought-iron are cast into the main body of the shoe for the purpose of strengthening the entire mass, it being in such a position that any stress tending to break the shoe in cross-section will exert a pulling tension on said strip, C, and a crushing strain on the body of the shoe, thus applying the wrought-iron of the one and the cast-iron of the other to the exact force it is best adapted to successfully withstand. These strips may be as many in number as desired. The heavier the work to be done, the more intense is the strain to be overcome or guarded against, and the more strength to be supplied by these strips, C."

The prior art was illustrated by the German publication of Von Waldegg in 1871, and by the following patents: 8,255, reissue, McConway; 9,329, reis-

sue, Curtice; 11,137, Parker; 11,746, Walsh; 18,962, Eidlitz; 27,141, McCammon; 34,539, Warden; 43,418, Lovelace; 50,976, Storer and Whelpley; 54,838, Arnold; 78,786, Brown; 82,677, Barrows; 98,530, Titus; 149,875, McNish; 168,408, Onions; 174,898, Congdon; 223,062, Nichols; 286,371, Baldwin; 298,283, Brigham; 324,851, Lappin; 329,459, Lappin; 340,353, Pfleging; 344,517, Bradel; 354,724, Meehan; 354,725, Meehan; 374,272, Sargent; 374,427, Pollock; 385,352, Hayes; 397,617, Tilden; 399,665, Hatt; 410,989, Pollock; 412,572, Whalen et al.

Thomas F. Sheridan and Edmund Wetmore, for appellant.
William O. Belt, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). Excepting the Pollock patent, which is rather doubtful as an anticipation, it may be taken that the combination of claim 2 was not in any one disclosure of the prior art. The elements, broadly, are the cast-iron body, the hard metal insets, and the wrought-iron strips imbedded in the body back of the insets. The body with insets, the composite shoe, having the advantages referred to by Herron respecting durability, friction, and self-fitting to the car-wheel, was invented and developed by Congdon, Lappin, and others. The placing of wrought-iron strips within a mold so that they should be imbedded in any iron casting which was desired to be strengthened against fracture and held together after fracture was shown by patents and by oral testimony to be an old and familiar means of accomplishing the aforesaid ends, so old and familiar that a foundry foreman of 27 years' experience testified that it would be employed without hesitation or experiment whenever occasion arose. That a transverse strain upon any such casting should call upon the tensile strength of the wrought iron and the crush-resisting strength of the cast iron between the wrought-iron strips and the surface where the strain is applied, as dwelt upon by Herron in his specification, is but the physical law of the structure, a law discovered and commonly used long before Herron's time. The Herron cast shoe is therefore the old Congdon cast shoe re-enforced with the old means of re-enforcing any casting.

That the present patent comes within the exceptions, and that invention was required to extend the well-known strengthening method to the casting of a brake shoe, is argued in this wise: The Congdon composite-face shoe was invented in 1876; use proved that it was weaker than the all-iron shoe; various inventors, McConway in 1878, Curtice in 1880, Sargent in 1887, had recognized the desirability of strengthening the Congdon shoe, and had tried various methods, but not the method of imbedding wrought-iron strips behind the insets; therefore, although the ordinary foundryman would have known how to do what Herron did if the thought had occurred to him, the failure of McConway and others to re-enforce the Congdon casting by this familiar foundry expedient proves that in 1890 the Herron shoe was not an obvious thing, no matter how plain it may seem now in the light of Herron's disclosure, and that the creative imagination of the inventor had to be brought into play to produce this new use of the wrought-iron strips. And the teachings of the Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, and other cases, are invoked to the effect that he who changes the failure or partial success of others into complete success is entitled to the award of monopoly.

The argument might appeal to us more persuasively on a different record. In this case it appears that Von Waldegg in 1871 had re-enforced the old cast-iron shoe by attaching a wrought-iron strip along the back. After the Congdon composite-face shoe came into use, McConway strengthened it by a wrought-iron backing plate, and Curtice and Sargent, differing from each other in details, applied wrought-iron strips along the sides of the composite face. These strips were placed in the molds according to the usual foundry practice.

Theoretically, the McConway backing plate holds together the cast-iron if that becomes fractured. It lends strength according to its mass. It cannot be bent in use without bringing into play the tensile strength of the metal in the front part of the plate and the crush-resisting strength of the metal at the back. The Curtice and the Sargent strips act as binders of broken cast iron, and, more prominently than in Herron's shoe, rely on the tensile strength of wrought iron and the crush-resisting strength of cast iron.

What new practical result did Herron attain by transferring the wrought-iron strips to the middle of the composite shoe? His shoe did not capture the market and drive out other re-enforced composite shoes. Of appellant's own output only 3 per cent. is of the Herron type. Nearly all of the great railroad systems of our country are named in the record, and only one adopted the Herron shoe. The superintendent of motive power of that system, in answering the question "Where did you use the Herron shoe?" said, "Where did we use it? We are not using it very extensively at present anywhere. We have substituted a steel-back shoe for it." Some smaller roads used the Herron shoe "a short time." Appellant's railroad witnesses substantially agree that equally good results are obtained with other re-enforced shoes. Appellant's unusual hammer test, the test by pressure being customarily employed, shows that the Herron shoe is stronger than an unre-enforced Congdon shoe. It proves nothing as to the comparative strengths of the Herron and of other re-enforced composite shoes.

The case standing, then, that Herron is entitled to no credit for the composite cast shoe, or for the method of strengthening castings by imbedding wrought-iron strips, or for the employment of wrought-iron strips to re-enforce composite cast shoes, and that the transference of the strips to the middle of the shoe accomplished no new practical result, the decree is affirmed.